IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARGARET L'HEUREUX, )<br>)<br>Plaintiff, )<br>) <br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY ADMINISTRATION, )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br><br>No. 15-CV-1048 |

## MEMORANDUM AND ORDER

Plaintiff Margaret L'Heureux claims she became unable to work on March 26, 2009 because of limitations caused by Lyme Disease, Hypothyroidism, Lipidemia, Asthma, and Gastroesophageal Reflux Disease. Plaintiff seeks review of a final decision of the Commissioner of Social Security denying plaintiff's requests for disability insurance benefits. For the reasons discussed below, the court affirms the Commissioner's decision.

**I.   Background**

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Doc. 6 at 1.) The agency denied plaintiff's applications initially and upon reconsideration. (*Id.*) Plaintiff and a vocational expert testified at a hearing before Administrative Law Judge ("ALJ") Susan Conyers on July 17, 2013. (*Id.* at 37–72.) On August 2, 2013, the ALJ issued a decision denying plaintiff's application. (*Id.* at 21–29.) On August 16, 2013, the Appeals Council denied plaintiff's request for review. (Doc. 6 at 8–11.) Therefore, the ALJ's decision became the Commissioner's final decision. Plaintiff timely requested judicial review.

Plaintiff asks this court to reverse or remand the Commissioner's decision because the ALJ erred in finding plaintiff's medically determinable impairment is not severe. (*See generally* Doc. 7.)

## II.     Legal Standards

In conducting this review, the court determines (1) whether the ALJ applied the correct legal standard, and (2) whether the factual findings are supported by substantial evidence in the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence" is a term of art, meaning "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). When evaluating whether the standard has been met, the court is limited; it must not reweigh the evidence or replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)). The party challenging the action bears the burden of establishing that any error prejudiced the party. *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002).

## III.    Analysis

The ALJ found that plaintiff had medically determinable impairments, including Lyme Disease, Hypothyroidism, Lipidemia, Asthma, and Gastroesophageal Reflux Disease, but that she did not have an impairment or combination of impairments that significantly limited or was expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months.

(Doc. 6 at 23.)  The ALJ also found that plaintiff had a medically determinable mental impairment, but that it caused no more than mild limitation.  In other words, the ALJ found that plaintiff's medically determinable impairments, or combination thereof, were not severe.  *(Id.* at 22.)

### A.     Physical Impairment

Plaintiff argues that the ALJ improperly concluded that plaintiff's treatment regime did not support a severe impairment.  Plaintiff refers to the record of treatment from different medical specialists, including a chiropractor, an acupuncturist, an ENT specialist, and a holistic doctor. She argues that the history of treatment demonstrates at least some limitation in her ability to carry out work activities.  Plaintiff suggests despite this record of treatment, the ALJ relied on the absence of surgery, hospitalization, or physical therapy to find that her impairments were not severe.

Defendant cites to seven examining and non-examining doctors who were considered in the ALJ's finding.  Defendant denied relying on the absence of certain treatments to come to this conclusion, but noted that "conservative treatment can reasonably demonstrate that a claimant's condition is relatively benign in nature, even if claimant follows her doctor's instructions." (Doc. 12 at 6 (citing 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987)).)  Plaintiff replied that the ALJ improperly relied on the lack of medical treatment to conclude her condition is not severe.  (Doc. 13 at 1.)  Plaintiff also highlights Charles Crist, M.D.'s and Dr. Kelley Arnold, D.C.'s opinions that plaintiff could not perform sedentary work.  (*Id.* at 1.)

"[S]tep two [is] designed to identify 'at an early stage' claimants with such slight impairments they would be unlikely to be found disabled even if age, education, and experience were considered." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).  The Tenth Circuit has said this step requires a claimant to make "a 'de minimis' showing of impairment," but the showing must evidence "more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.

1997). It is plaintiff's burden at step two to demonstrate "any impairment or combination of impairments" to be sufficiently severe that it "significantly limits" her "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Whether a claimant's medically determinable condition is severe depends on whether the impairment "significantly limits" claimant's "physical or mental ability to do basic work activities." *Id.*

At step two, the ALJ looks at "the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his ability to work." *Hinkle*, 132 F.3d at 1352. Basic work activities are "the ability and aptitudes to do most jobs" and include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; and the facility to understand, remember, and carry out simple instructions; use judgment; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921. The ALJ may only deny a claim at step two if the "evidence shows that the individual's impairments, when considered in combination, are not medically severe. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential process." SSR 85-28, 1985 WL 56856, at *3; *Gosch v. Astrue*, 2011 WL 1899289 at *4 (D. Kan. May 19, 2011). "In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step [two]." SSR 96-4p, 1996 WL 374187, at *1.

With respect to plaintiff's claims of extreme fatigue and pain, the ALJ acknowledged plaintiff's allegations that she was limited in her ability to lift, walk, and stand. While the ALJ admitted these medically determinable impairments *could* reasonably be expected to produce the alleged symptoms, the symptoms here are not supported by the medical records, and therefore are not credible. For instance, the ALJ acknowledged plaintiff's complaints of tinnitus, but observed that her hearing tested

-4-

normal.  The ALJ stated that plaintiff's eye swelling was reportedly hereditary, and her visual acuity was normal.  The ALJ stated plaintiff did not present evidence of chronic fatigue syndrome, but the ALJ acknowledged the treatment records reporting fatigue.  The ALJ also acknowledged plaintiff's "unremarkable" physical examination that showed mild varicose veins and some tenderness, but full range of motion, no evidence of obstruction to the seep venous system, no inflammatory arthritis, and preserved strength and dexterity.  With respect to plaintiff's claim of chest pain, the ALJ stated that the testing did not reveal a cardiac cause for this symptom.  The ALJ further noted evidence of hypertension that were treated with medication and stated that plaintiff has not experienced complications from this condition.  Finally, to address plaintiff's history of esophageal stricture prior to the alleged onset of disability, the ALJ said that plaintiff did not present evidence of ongoing limitation in her ability to perform work activities from this condition.  In sum, the ALJ found the examination findings and objective evidence did not support a finding that plaintiff has a physical impairment or combination of impairments that significantly limits her ability to perform basic work activities.

In addition to assessing the medical evidence, the ALJ considered six factors to assess the credibility of plaintiff's statements relating to her own assessments of her impairments: 1) the claimant's activities of daily living; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms; 5) treatment, other than medication, for relief or other symptoms; 6) any measure other than medication used to relieve pain or other symptoms; and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments.  In assessing these factors, the ALJ found that plaintiff's subjective complaints of pain and fatigue were not credible.  Specifically, the ALJ noted that plaintiff performs housework and is independent in her personal care.  Plaintiff claims limitations in

this regard, such as only being able to walk her dog one block, but the ALJ found this inconsistent with reports from her cardiologist that indicate she walks more than two miles per day.  The ALJ considered plaintiff's claims regarding her medication and other treatment methods and noted those treatments are conservative in nature and do not enhance her credibility.

The ALJ also considered Dr. Crist's medical opinion.  The ALJ gave the opinion little weight after noting the opinion lacked support and was made without significant observations or examination findings.  The ALJ also considered the opinion of Dr. Arnold, plaintiff's chiropractor, who said that plaintiff was limited to far less than sedentary work.  The ALJ gave this opinion little weight because the report also indicates that plaintiff has full range of motion, which was supported by the record.  The ALJ considered reports from Mary L. Tawadros, M.D., and Charles T. Hitchcock, M.D., who reviewed plaintiff's claim at the request of the state agency.  These doctors concluded plaintiff's physical impairments were non-severe and the ALJ gave these opinions substantial weight.  Finally, the ALJ considered statements from plaintiff's husband but gave those statements little weight because he was not found credible for the same reasons as plaintiff.

Plaintiff does not offer any medical evidence contradicting the ALJ's findings, but instead cited her "extensive history of treatment" and argued the ALJ gave too much weight to her daily activities when determining her credibility.  This is insufficient to contradict the ALJ's finding of non-severity.  The ALJ's finding that plaintiff's physical conditions were not severe is supported by substantial evidence in the record.

### B.     Mental Impairment

Plaintiff also suggests that the ALJ erred when she determined plaintiff's anxiety was not severe in combination with her physical symptoms.  (Doc. 7 at 12.)  To determine whether a mental impairment is severe, the Commissioner rates the claimant's degree of limitation in four broad

functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace; along with 4) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3)–(4), 416.920a(c).  If the ALJ rates the claimant's degree of limitation as "none" or "mild" and "none" in the fourth area, the claimant's impairment will not be found severe, unless the evidence otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities.  *Id.* § 404.1520a(d)(1).

Here, the ALJ found plaintiff's impairment was "not more than mildly limited" in the first three areas and for the fourth area the ALJ found "no episode of decompensation."  (Doc. 6 at 28.)  In reaching this decision, the ALJ gave great weight to examining doctors Arlene O'Neal Gaut, Ph.D., and Michael H. Schwartz, Ph.D., and non-examining doctors Robert H. Blum, Ph.D., and Sallye M. Wilkinson, Ph.D.  Although plaintiff cites various doctors' observations of plaintiff's anxiety symptoms, this does not contradict the ALJ's findings of anxiety with minimal limitation.  Therefore, the ALJ's opinion that plaintiff did not have a severe physical or mental limitation, or combination of the two, is supported by the substantial evidence in the record.  For these reasons, the court affirms the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 30th day of March, 2016, at Kansas City, Kansas.

/s/ Carlos Murguia_____
**CARLOS MURGUIA**
**United States District Judge**